**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGNIA**
**RICHMOND DIVISION**

| | |
|---|---|
| ANDREW JAMES MCGONIGLE, on behalf of himself and others similarly situated<br><br>    Plaintiff,<br><br>vs.<br><br>RICHMOND FITNESS, INC. d/b/a AMERICAN FAMILY FITNESS<br><br>    Defendant. | Case No. 3:25-cv-00167-HEH |

**Plaintiff's Response in Opposition To Defendant's Motion To Dismiss**

## I.    INTRODUCTION

In support of its motion to dismiss the Plaintiff's claims for blatant violations of the Telephone Consumer Protection Act's prohibitions against calling numbers on the National Do Not Call Registry, Defendant advances arguments that run contrary to the statutory text, Congressional intent, and a mountain of contrary case law. Similarly, the Fourth Circuit itself has likewise rejected Defendant's attempts to strike the class allegations here at the pleadings stage. Defendant's blatant attempt to gut almost 25 years' worth of TCPA § 227(c) Do Not Call Registry case law must be rejected.

## II.    BACKGROUND

Plaintiff Andrew James McGonigle filed this Class Action Complaint on January 21, 2025, alleging violations of the Telephone Consumer Protection Act (TCPA) by Defendant Richmond Fitness, Inc. d/b/a American Family Fitness. (ECF 1). On March 25, 2025, Defendant filed a Motion to Dismiss Plaintiff's Class Action Complaint or, alternatively, a Motion to Stay and Motion to Strike Class Allegations. (ECF 13). In its motion, Defendant argues that the TCPA does not provide a private right of action for the claims presented, challenges whether text messages sent to cell phones violate the TCPA, and raises issues regarding class certification, seeking either to strike the class claims or stay these proceedings.

Defendant laments the fact that it believed it had consent to send the text messages at issue, but Defendant's conduct was easily avoidable and only occurred because Defendant failed to utilize the Federal Communication Commission's Reassigned Number database before it sent the text messages at issue.

Calling the new owner of a phone number based on the prior owner's provisioning of a phone number has been held to be a violation of the Telephone Consumer Protection Act for over a decade. In 2015, the FCC issued a declaratory ruling (the "2015 Ruling") which addressed, *inter alia*, "whether a caller making a call subject to the TCPA to a number reassigned from the consumer who gave consent for the call to a new consumer is liable for violating the TCPA." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7999 ¶ 71 (2015). The FCC determined that "the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber," id. at ¶ 72 and, thus, "calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based," id. at ¶ 73. However, liability for such conduct is easily avoidable as subsequently the FCC issued a new order that it was "not to demand the impossible of callers" and established a comprehensive database that contains information regarding reassigned numbers. *See* 33 F.C.C. Rcd. 12024 at ¶ 58. Callers who utilize the database will not be liable for calling a reassigned number if the database fails to report the reassigned number. *See Elleby v. Liberty Univ.,* 2022 U.S. Dist. LEXIS 41988, *7-8 (W.D. N.C. 2022). Defendant appears to have taken no such step.

This response follows.

### III.  ARGUMENT

A.  *Section 227(c) of the TCPA provides a private right of action for calling a number on the Do Not Call Registry. The regulation sued under here was promulgated under Section 227(c).*

"The Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, she can add her number to the list.

The TCPA then restricts the telephone solicitations that can be made to that number." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019), *cert. denied*, *DISH Network L.L.C. v. Krakauer*, 140 S. Ct. 676 (2019). Ignoring the Fourth Circuit's counsel in *Krakauer*, which upheld the certification of a TCPA 227(c) class for calls to numbers on the National Do Not Call Registry, as here, Defendant here posits something remarkable: every court and the thousands of decisions to have considered the propriety of the TCPA's private right of action for calls to numbers on the National Do Not Call Registry all got it wrong, since the TCPA's authorization for creation of the National Do Not Call Registry (allegedly) expired in 1992 and was not adequately reinstated by any subsequent authority, including Congress's mandate in 2003. That approach is at odds with the plain statutory history, Congressional intent, and the text of the relevant provisions, and is further contradictory to the Defendant's own canons of construction.

Defendant's argument is at odds with the mountain of case law holding otherwise. As with any question of statutory interpretation, the court's inquiry "begins with the text." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The relevant regulation here, 47 C.F.R. § 64.1200(c)(2), provides that "No person or entity shall initiate any telephone solicitation to: A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." As a federal regulation, this particular regulation must have been promulgated under *some* part of the TCPA. "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). In this regard, only a handful of subsections of the TCPA allow for the promulgation of regulations:

  • § 227(b)(2) authorizes the FCC to implement requirements that relate to the use of prerecorded voices and automatic telephone dialing systems;

- § 227(c) authorizes the FCC to promulgate rules relating to the "need to protect residential telephone subscribers' privacy rights";
- § 227(d)(1)–(3) allow regulations relating to technical and procedural standards related to fax machines, automatic telephone dialing systems, and "systems that are used to transmit any artificial or prerecorded voice message";
- § 227(e)(3) provides for regulations relating to misleading or inaccurate caller ID; and
- § 227(i) allows for the FCC to promulgate regulations to streamline information sharing with the FCC related to violations

All but § 227(c) are quickly eliminated as not even remotely applicable to the creation of the Do Not Call Registry. As will be explained, it follows that the instant regulation must have been promulgated under § 227(c). As Defendant correctly observes, 47 C.F.R. § 64.1200 was initially promulgated by the FCC in 1992 and authorized by Congress when it passed the TCPA in 1991 under 47 U.S.C. § 227(c)(1), which required the FCC to conduct "rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights." Congress required the FCC to conclude *that* rulemaking proceeding "Not later than 9 months after December 20, 1991." 47 U.S.C. § 227(c)(2). And, in so doing, Congress explicitly authorized and mandated the FCC to consider whether it was feasible to "require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." 47 U.S.C. § 227(c)(3).

Defendant claims that the FCC's failure to create the Do Not Call Registry in 1992, and Congress' failure to reference or otherwise reinstate its temporal authority under 47 U.S.C. § 227(c)(1) when it passed the Do Not Call Implementation Act in 2003, results in the lack of a private right of action to enforce the Do Not Call Registry because it was not promulgated under 47 U.S.C. § 227(c), but rather the 2003 Act. In other words, Defendant concedes that the Act properly created the Do Not Call Registry and incorporated it into the TCPA, but argues that, without the proper "hook" back to 47 U.S.C. § 227(c) therein, there exists no private right of action to enforce the Registry's protections under that subsection. As support for that shaky

4

proposition, Defendant reasons that the time requirement in 47 U.S.C. § 227(c)(1) *forever barred* future rulemaking and/or promulgation of additional regulations, rendering 47 C.F.R. § 64.1200(c)(2) unenforceable under 47 U.S.C. § 227(c)(5)'s private right of action for violations of the regulations prescribed "under" that subsection. However, the plain text of 47 U.S.C. § 227(c)(3) *does not* require the creation of a database by 1992, or "by" a certain date at all, contrary to Defendant's contention. 47 U.S.C. § 227(c)(3).

Defendant gets this threshold question wrong. A review of 47 U.S.C. § 227(c)(1)(D) confirms that Congress explicitly contemplated and authorized the FCC to "consider whether there is a need for *additional Commission authority* to further restrict telephone solicitations, including those calls exempted under subsection (a)(3) of this section, and, if such a finding is made and supported by the record, *propose specific restrictions to the Congress*." In other words, no part of 47 U.S.C. § 227(c)(1) barred future rulemaking, as the Defendant claims. Congress was merely setting a date by which it desired *initial* rulemaking to be completed by, not barring *future* rulemaking after that date, and most certainly not in light of explicit Congressional authority authorizing such subsequent rulemaking in 15 U.S.C. § 6153. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 278 (2012) ("The one body whose future actions a legislature has no power to affect is the legislature itself. Just as a corporate board of directors cannot adopt an immutable policy, legislators cannot make their laws irrepealable or disable themselves or their successors from taking action."). To that end, Congress explicitly mandated the FCC to "consider whether making such practices mandatory, and imposing substantial sanctions for violations would increase their effectiveness to the point that they could satisfy the statutory requirements of this Act." House Report 102–317, 102d Cong., 1st Sess. (1991) at 20. In other words, at the time it passed the TCPA, Congress made

5

clear that the 1992 report it required was to be an *initial report*, not a *bar* to future rulemaking, as claimed by the Defendant. As the District of Maryland has observed:

> Subsection (c) also provided the FCC authority to 'require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase.' § 227(c)(3). The FCC did so when it created the national 'Do-Not-Call' registry. 47 C.F.R. § 64.1200(c)(2).

*Ford v. NaturaLawn of Am., Inc.*, No. CV 24-354 PJM, 2024 WL 3161762, at *3 (D. Md. June 25, 2024); *accord Cacho v. Amity One Debt Relief*, No. EP-24-CV-160-KC, 2024 WL 4594177, at *4 (W.D. Tex. Oct. 24, 2024). In any event, as will be discussed below, Congress explicitly authorized the promulgation of the regulation at issue here, "under the [TCPA,]" in 2003, when it passed the Do Not Call Implementation Act at 15 U.S.C. § 6153.

The FCC acted pursuant to Congress' mandate and, in so doing, explicitly made clear to Congress that it presumed to leave the door open to future rulemaking. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("1992 TCPA Order"), CC Docket No. 92-90, Report and Order, 7 FCC Rcd. 8752. In considering whether it was feasible to implement the Do Not Call Registry in 1992, the FCC concluded that, given the limitations of technology *at the time,* the database would be "costly and difficult to establish and maintain in a reasonably accurate form," including because of a lack of widespread caller ID adoption, and that implementation of a database at the time would result in shifted costs to consumers, which would ultimately detract from consumer protection efforts. *Id.* at 8760. Notably, in making such a determination, the FCC did *not* hold that a private right of action should not apply to such a database or that it was inappropriate from a consumer protection perspective. To the contrary, the FCC explicitly stated that a "consumer may also file suit . . . if he or she has received more than one telephone call . . . *in violation of the guidelines* for making telephone solicitations." *Id.* at

8780. The FCC used the word "the," not "these," indicating that the guidelines promulgated in the 1992 TCPA Order were not the exclusive remedies under which a consumer could sue under Section 227(c)(5). There can be little doubt that that direction came from § 227(c).

Nor did the FCC's rulemaking close the door to the creation of a future database or future rulemaking to further the TCPA's mandate in crafting rules to protect consumer privacy. A statute is "alterable when the legislature shall please to alter it." *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Indeed, the FCC explicitly made clear to Congress that it required "no further authority . . . at the present time to accomplish the goals of the TCPA." 1992 TCPA Order at 8781. And, in response to commenters who requested that the FCC start the rulemaking process anew, the Commission concluded that "at this time," the "renewal of the rulemaking process is not warranted," suggesting that the FCC retained the authority to continue rulemaking at a future time. *Id.* In fact, to this end, the FCC explicitly stated that "If our current approach is not successful . . . it may be necessary to initiate a rulemaking proceeding to establish more stringent restrictions, or even to recommend to Congress that it increase penalties or make other statutory changes." *Id.* at 8781-82. This explicitly mentions the possibility of future rulemaking, which could include revisiting the database method if the company-specific do-not-call lists promulgated under the act failed to meet consumer privacy needs. *See id.* at 8761.

But even if this Court were to adopt the Defendant's argument that Section 227(c)(1) in some manner restricted the FCC's ability to promulgate regulations to protect consumer privacy as an initial matter after the initial rulemaking in 1992, a proposition that conflicts with the presumption that "the TCPA is a remedial statute, it should be liberally construed", *Carlton v. PDR Network, LLC*, 80 F.4th 466, 479 (4th Cir. 2023), Congress explicitly reopened that door when it passed the Do Not Call Implementation Act of 2003 ("2003 Act"). *See also Radvansky v.*

*Kendo Holdings, Inc.*, 744 F. Supp. 3d 1314, 1321, 1321 n.3, n.4 (N.D. Ga. 2024) ("[T]he 2003

FCC order applies to section 227(c). . . .Therefore, Radvansky may bring a case [under (c)(2)].").

     The Defendant's argument must additionally fail because, in the 2003 Act, at 15 U.S.C. §

6153, Congress *explicitly* delegated authority to the FCC to promulgate regulations relating to

the newly-created National Do Not Call Registry "under the [TCPA]," and the FCC did so by

initiating a rulemaking proceeding under subsection (c), the only appropriate subsection dealing

with "consumer privacy." Congress explicitly passed the 2003 Act with a realization that the

TCPA's then-current consumer privacy protections were inadequate. It is clear that, in Congress'

directive to align the FTC and FCC's procedures, Congress intended for any subsequent

rulemaking, including the FCC's 2003 TCPA Order, to provide a private right of action. Indeed,

Congress explicitly stated that, "despite [internal do not call list and other] restrictions,

telemarketing complaints continue to rise and there is an increasing need to provide consumers

with the ability to opt-out of telemarketing calls." House Report 108–8, 108th Cong., 1st Sess.

(2003) at 2-3. Accordingly, the Committee explicitly explained that:

> The FCC's do-not-call rules were created under the TCPA. *That statute explicitly gives the FCC the authority to set up a national do-not-call database.* In 1992, the FCC undertook a rulemaking, and after reviewing comments, determined that a national do-not-call list was too costly and burdensome at that time. The FCC instead opted to require telemarketers to maintain company-specific do-not-call lists. On September 12, 2002, the FCC issued a notice of proposed rulemaking to *review and possibly revise* its do-not-call rules. The comment period closed on January 31, 2003, and the FCC's Chief of Consumer and Governmental Affairs Bureau announced that the FCC's goal is to avoid regulatory duplication by working closely with the FTC and fashioning rules that benefit consumers and the telemarketing industry. As the FCC undertakes the process of revising its do-not-call regulations, there is the potential for inconsistencies between the FTC and FCC do-not-call rules. To address this issue, H.R. 395 directs the *FCC to complete its rulemaking within* 180 days of enactment and further requires the FCC to consult and coordinate with the FTC to maximize consistency between the two regulations. However, because the *FCC is bound by the TCPA*, it is impossible for the FCC to adopt rules identical to the FTC's TSR. . . . In order to remedy these types of inconsistencies, either the FTC or FCC must address them administratively, or Congress must address them legislatively. We encourage the FTC and the FCC to take the necessary steps to make

their rules as consistent and compatible as possible.

*Id.* at 4 (emphasis added). Consistent with the Committee's intent, Congress required the FCC to issue a "final rule pursuant to the rulemaking proceeding that it began on September 18, 2002, *under the Telephone Consumer Protection Act* (47 U.S.C. 227 et seq.)." 15 U.S.C. § 6153 (emphasis added). It further directed that, "In issuing such rule, the Federal Communications Commission shall consult and coordinate with the Federal Trade Commission to maximize consistency with the rule promulgated by the Federal Trade Commission." *Id.*

And under *that* Congressional mandate, the FCC promulgated the instant regulation, 47 C.F.R. § 64.1200(c)(2), pursuant to its authority *under* the TCPA, and pursuant to the *explicit authority* Congress in 2003 gave the FCC to conduct rulemaking *"under"* the TCPA. 15 U.S.C. § 6153; s*ee also Siringi v. Parkway Fam. Mazda/Kia*, No. CV H-23-1499, 2023 WL 7130867, at *2 (S.D. Tex. Oct. 30, 2023) ("The Federal Communications Commission promulgated 47 C.F.R. § 64.1200[(c)(2)] under its authority to implement the Telephone Consumer Protection Act."). The plain text of the 2003 Act, as well as the FCC's resultant rulemaking, cited below, belies the Defendant's contention that those rules "were not issues pursuant to authority from Subsection 227(c) the TCPA." The Act, by its plain text, does not permit for the promulgation of regulations *under the 2003 Act*, as claimed by Defendant, but rather *"under" the TCPA*. Under the ordinary meaning canon, Congress used the word "under" in the usual sense indicating derivation, subordination, or legal authority, rather than a looser association. Scalia & Garner 70. Thus, if the 2003 Act says "under the [TCPA,]" any regulation authorized thereunder must draw authority *from the TCPA*, not from any other related act, such as the Telemarketing Sales Rule or the 2003 Act itself, as Defendant claims. "[T]he meaning of a statute is to be looked for, not in any single section, but in all the parts together and in their relation to the end in view." *Id.* at 168. Reading the 2003 Act as empowering regulations *under the TCPA* rather than *under the 2003 Act*

(or under the Telemarketing Sales Rule) fits with how statutes, amendments, and administrative rulemaking works–the authorizing statute does not become the base statute or amendment, nor does the authorized rule. *See Alexander v. Sandoval*, 532 U.S. 275, 286, 291 (2001) (explaining genesis of a right of action). And it is the plain meaning evident from the text.

As outlined above, only a handful of subsections of the TCPA allow for the promulgation of regulations, and § 227(c) is the only appropriate one applicable here. The establishment of regulations "under the TCPA" for implementing the Do Not Call Registry has nothing to do with regulations concerning autodialers (§ 227(b)), fax machines and other systems used to transmit prerecorded messages (§ 227(d)), misleading or inaccurate caller ID ((§ 227(e)), or information sharing with the FCC ((§ 227(i)). Those regulations called for under the 2003 Act, however, fit nicely within the ambit of § 227(c), and only that subsection, which explicitly deals with the promulgation of regulations to "protect residential telephone subscribers' privacy rights." And, as explained above, Section 227(c), under which 47 C.F.R. § 64.1200(c)(2) was unquestionably promulgated, contains a private right of action.

In any event, the fact remains that the FCC stated that it promulgated the instant do not call regulations at 47 C.F.R. § 64.1200(c)(2) pursuant to authority Congress gave it in 15 U.S.C. § 6153, which authorized the FCC to promulgate the instant regulation "under" the TCPA at 227(c). *See Bowen*, 488 U.S. at 208. The *only* authority "under" which the FCC could promulgate regulations "under the [TCPA]" that supports the Congressional mandate is § 227(c), which provides for the instant private right of action to "protect residential subscribers' privacy rights to avoid receiving telephone solicitations to which they object." The FCC said so itself, confirming it was doing so pursuant to § 227(c). *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (citing 47 C.F.R. § 64.1200(c)(2) and explaining that it was created

pursuant to regulations promulgated by the FCC). Indeed, to adopt the Defendant's reading of 227(c) as time barred would render the mandate of the 2003 Act ineffective, in violation of the presumption against ineffectiveness, as there is simply no other statutory subsection "under the TCPA" upon which Congress could direct the FCC to promulgate the regulations it ordered to implement the Do Not Call Registry, the entire purpose of which is to permit consumers to *lodge their objections against unsolicited telemarketing calls*.

And, although not necessary to reaching the instant conclusion, the FCC's regulatory history confirms that the FCC promulgated 47 C.F.R. § 64.1200(c)(2) under its authority in § 227(c), as reconfirmed by Congress in 2003 when it passed the 2003 Act at 15 U.S.C. § 6153. Pursuant to that mandate, the FCC referred back to the discussion from above, and then it expressly sought comment on whether "network technologies have been developed over the last decade," to permit the implementation and incorporation of the Do Not Call Registry and other rulemaking. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14118. And, as the FCC explained, it adopted 47 C.F.R. § 64.1200(c)(2) as a "second major proceeding" under the TCPA, as authorized by Congress, to "supplement the current company-specific do-not-call rules for those consumers who wish to continue requesting that particular companies not call them." *Id.* at 14017. It follows that, if the instant regulation "supplemented" regulations for which there was a private right of action in the first proceeding, the new regulations in the second proceeding, authorized by Congress, have that same private right of action as well. The FCC references Section 227(c) no fewer than 54 times, and not once does it state that its rulemaking authority was time-barred; to the contrary, in implementing the Registry mandate, the FCC *cites* to Section 227(c)(3) of the TCPA as *explicitly* authorizing the use of a database

and *confirms it is proceeding under that section*. *Id.* at 14028, 14034.

Of particular import against the Defendant's argument, in the 2003 Order, the FCC *explicitly stated* that it was promulgating what would become 47 C.F.R. § 64.1200(c)(2): "Pursuant to our *authority under section 227(c)*, we adopt a national do-not-call registry that will provide residential consumers with a one-step option to prohibit unwanted telephone solicitations." *Id.* at 14034 (emphasis added). The FCC also reviewed the "other requirements of section 227(c)(1)," which, as described above, impose no time-restrictive language by that subsection's explicit statutory text. *Id.* at 14042; 47 U.S.C. § 227(c)(1). In this regard, Defendant's position is especially curious in light of its contention that a "blunt view" of regulations can lead to "erroneous conclusions" of the same type Defendant makes here.

Nor do the FCC's comments on the TCPA's private right of action in the 2003 TCPA Order mandate a different result. Defendant takes the quote that the "Commission declines to make any determination about the specific contours of the TCPA's private right of action" out of context. In context, the FCC was addressing commenters' concerns over the TCPA's requirement that a consumer receive two calls in a twelve-month period, or whether one phone call with multiple violations is sufficient. *Id.* at 14135–36. As such, that portion of the 2003 TCPA Order does not stand for the proposition, citing no one, that the Order "disavowed any opinion about" the propriety of promulgating the instant regulations or that the order "does not provide for any private right of action for a Section 64.1200(c)(2) violation."

Defendant's argument that the 2003 Act or the 2003 TCPA Order needed to additionally explicitly outline that they were intended to be promulgated in spite of the 1991 rulemaking requirement runs contrary to the proposition that "there is no legal effect to a statutory provision stating that any exceptions to the statute's requirements . . . must specifically refer to the statute."

*Scalia & Garner* 279. As explained above, it also runs contrary to the presumption against ineffectiveness. If the "language is susceptible of two constructions, one of which will carry out and the other defeat [its] manifest object, [the statute] should receive the former construction." *Id.* at 63. Relatedly, the "presumption of validity disfavors interpretations that would nullify the provision or the entire instrument, . . . since an interpretation that renders a provision invalid (unlawful) 'obstructs' its application to the maximum." *Id.* at 66. Defendant's contrary contention, that Congress required the FCC to create a database by 1992, or else forever bar future rulemaking, including the 2003 Act *passed by Congress* authorizing such rulemaking under the TCPA, runs contrary to these canons of construction and common sense.

Defendant's position begs the question as to why Congress would direct the FCC to promulgate implementing regulations under the TCPA when it contends that Congress eliminated the FCC's authority to do so in 1992, or why Congress would do something it did not intend explicitly to do. Congress was clear when it directed the FCC to implement the newly-created Do Not Call Registry "under the [TCPA]." 15 U.S.C. § 6153. The FCC did so, promulgating 47 C.F.R. § 64.1200(c)(2) under the TCPA's consumer privacy provision, 47 U.S.C. 227(c), which contains a private right of action. As the regulation sued under here, 47 C.F.R. § 64.1200(c)(2), was promulgated under 47 U.S.C. 227(c). There exists a private right of action for violations of the same, as Congress intended under 47 U.S.C. 227(c)(5).

**B.**    *The TCPA's Do Not Call Registry Provisions applies to text messages to cell phones.*

Defendant also argues that the Plaintiff's case should be dismissed because of two interrelated arguments: the TCPA's Do Not Call Registry provisions do not apply to text messages, and a cell phone is not a "residential" line under the TCPA. This Court can dispatch both arguments, as this Court and countless others have.

13

"A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). District and circuit courts around the country and this Court have had no trouble coming to the same inevitable conclusion. *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 986 (9th Cir. 2023); *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022); *Ford v. NaturaLawn of Am., Inc.*, No. CV 24-354 PJM, 2024 WL 3161762, at *6 (D. Md. June 25, 2024); *Cavey v. MarketPro Homebuyers, LLC*, 542 F. Supp. 3d 418, 424 (E.D. Va. 2021). Ignoring the Supreme Court's pronouncement in *Campbell-Ewald*, Defendant attempts to distinguish the statutory text (and the judgment of the Supreme Court) by reasoning that the definition of a "call" is different in subsection (b) as opposed to (c). There is no good reason why the definition of "call" ought to be treated any differently. Indeed, to that end, the Defendant's interpretation of the 2003 FCC Order runs contrary to the *explicit text* of the relevant regulations, 47 C.F.R. § 64.1200(c)(2), 47 C.F.R. § 64.1200(f)(15), and 47 C.F.R. § 64.1200(e), which states:

> The rules set forth in paragraph (c) and (d) of this section [i.e. including 47 C.F.R. § 64.1200(c)(2), sued under here] are applicable to any person or entity making telephone solicitations or telemarketing calls *or text messages to wireless telephone numbers* to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991."

As an initial matter, "A word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning." *Scalia & Garner* 170. "[T]here is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932). If the Supreme Court has stated that 47 U.S.C. § 227(b)'s prohibition against automated "calls" to cell phones applies to text messages, so too should 47 C.F.R. §

14

64.1200(f)(15), (e), and (c)(2)'s prohibition of "calls" to cell phones on the Do Not Call Registry apply equally to text messages. And nowhere in the 2003 TCPA Order or the statutory text does the FCC state that the regulations it promulgated under 64.1200 apply *only* or *exclusively* to "voice" calls. As one court noted, "[t]he statute does not specify that it must be a voice call or a live telephone solicitation or a live telemarketing call: it simply applies to telephone calls broadly. Because the FCC recognizes text calls as a type of call, a text message would presumably be a form of a telephone call under § 227(c)(5)." *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *8 (M.D.N.C. Aug. 12, 2024). Defendant's attempts to substitute the rules of good statutory construction, the plain text of the statute, and Supreme Court precedent for an administrative agency's *dicta* should be rejected, particularly as Defendant calls the kettle black in this regard, urging this Court to disregard the FCC's interpretation in other sections of its brief. Indeed, like Defendant's previous argument, nearly every court to consider whether there exists a private right of action for text messages sent to cell phones on the do not call registry has concluded that there is such a right.

But even if this Court were to conclude that a "call" under § 227(c) and 47 C.F.R. § 64.1200(f)(15) does not include text messages, Defendant ignores the plain text of the *regulation itself*, which prohibits making or initiating any "telephone solicitation" to a number on the Do Not Call Registry, and not just "calls." 47 C.F.R. § 64.1200(c)(2). Indeed, instead of looking at the 2003 FCC Order, the Court should first look to the text of the regulation itself, and that text is clear. What is a "telephone solicitation?" As the Seventh Circuit explained, also of relevance to the aforementioned discussion on appropriate promulgation:

> In enacting the TCPA, Congress granted the FCC statutory authority to create rules protecting consumers from unwanted "telephone solicitations." *See* 47 U.S.C. § 227(c). The FCC promulgated the regulations at issue here pursuant to its delegated authority and incorporated Congress's definition of "telephone solicitation" within them. 47 C.F.R. §

15

64.1200(f)(15).

*Hulce v. Zipongo Inc.*, 132 F.4th 493, 497 n.1 (7th Cir. 2025) (reasoning that a text message was a telephone solicitation but affirming dismissal on other grounds).

The term "telephone solicitation" is defined at 47 C.F.R. § 64.1200(f)(15) as the "initiation of a telephone call *or message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." By its plain text, then, 47 C.F.R. § 64.1200(c)(2) prohibits making a "telephone solicitation," which such term includes *either* a *call* or a *message*. If a text message is not a "call" under 47 C.F.R. § 64.1200(c)(2), it is surely a "message," and therefore still actionable. Numerous courts, including those within the Fourth Circuit, as well as the Ninth and Seventh Circuits, have agreed. *E.g.*, *Hall*, 72 F.4th at 986; *Warciak*, 949 F.3d at 356; *Ford*, 2024 WL 3161762, at *6 ("At bottom, the TCPA permits a telephone consumer to sue a telemarketer if it can be shown that the consumer received more than one solicitation (whether by call or by text) within the preceding 12-month period in violation of the FCC's regulations governing such communications.").

Nor is the Defendant's position that text messaging did not exist in 1991 at all availing. As an initial matter, as the Supreme Court has confirmed, Section 227(b)'s prohibition against placing automated "calls" also applies to text messages, and Section 227(b) was an original part of the TCPA, as it was written in 1991, when text messages did not exist. Moreover, when the FCC promulgated 47 C.F.R. § 64.1200(c)(2), pursuant to its Congressional mandate, in 2003, it did so also promulgating 47 C.F.R. § 64.1200(e), which itself confirms that 47 C.F.R. § 64.1200(c)(2) applies to cell phones. As the District of Maryland explained in *Ford*:

> Another regulatory provision clarifies that the kinds of calls prohibited in Section 64.1200(d), if made to a residential telephone number, are equally prohibited if made to a wireless telephone number. *Id.* § 64.1200(e). For more than a decade, courts and the FCC have understood the TCPA and its implementing regulations to limit marketing text

16

messages sent to residential cell phone numbers as much as calls made to residential telephone numbers.

2024 WL 3161762, at *4. The *Hudson* court conducted a similar analysis, relying on the same authorities as above, and concluded the same. Text messaging was very much present in 2003. And, if there was any doubt as whether a text message can constitute a "telephone solicitation," it is clear that the FCC adopted a belt-and-suspenders approach to drafting, including both "calls" and "messages" in the definition, and explicitly extending the regulation to apply to cell phones.

Nor does the Plaintiff rely on *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2023 TCPA Order"), CG Docket No. 02-278, or its subsequent developments. All the aforementioned provisions were present in the TCPA and CFR in 2003 and before. So, to quote the Defendant, "[t]he time for the FCC to do that . . . was in 2003," and the FCC did so. The Defendant cites the 2023 Order in which it contends that the FCC allegedly expanded the TCPA's reach to cover cell phones. Not so. The 2023 Order explicitly stated that it was *not* expanding the TCPA. Indeed, it stated that, "[T]he Commission and courts have long held that text messages are calls under the TCPA. . . . *[W]e are not expanding the National DNC Registry's restrictions*." 2023 TCPA Order at p. 26, ¶63 (emphasis added). At least two Courts have agreed. *Reimer v. Kohl's, Inc.*, No. 23-CV-597-JPS, 2023 WL 6161780, at *4 (E.D. Wis. Sept. 21, 2023) ("Against this backdrop, the Court is constrained to agree with Plaintiff that the Notice is a clarification and not a substantive change to the law."); *Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (reasoning that because § 64.1200 references certain exceptions for text messages, it would be peculiar if § 64.1200(c) did not apply to texts).

And the fact that the FCC established reassigned number database safe harbor rules under only § 227(b) is not relevant either. That the database safe harbor does not apply to § 227(c) could have been for many reasons unrelated to the existence of a private right of action, not least

of which because § 227(c)(5) requires the receipt of "more than one" call, a restriction that § 227(b) does not have. In any event, it is wholly inappropriate for Defendant to use the FCC's inaction and silence on a matter as a reliable basis for interpreting a statute. The Defendant's form of interpretation, relying on what the FCC and Congress *didn't* say or *failed to do*, is an unreliable, and often misleading, basis for inferring legislative intent. *Petteys v. Butler*, 367 F.2d 528, 538 (8th Cir. 1966) (Blackmun, J., dissenting) ("[I]f the Congress intended to provide additional exceptions, it would have done so in clear language."). "What the [Defendant] asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926).

Defendant's related arguments all draw from various unrelated and irrelevant portions of the FCC's regulatory authority and rulemaking, but all of them neglect the very starting point of any statutory analysis: the text itself. And here, the text is clear: 47 U.S.C. § 227(c)(5) imposes a private right of action for any violation of a regulation promulgated under that subsection. As explained above, 47 C.F.R. § 64.1200(c)(2) prohibits the initiation of a "telephone solicitation" to a telephone number on the National Do Not Call Registry. And 47 C.F.R. § 64.1200(f)(15) defines a telephone solicitation as either a *call* or a *message*. Just as well, well-established principles of statutory construction, as confirmed by Supreme Court precedent, dictate that a "call" includes a text message in other sections of the statute. That conclusion is confirmed by the statute itself, which confirms that subsection (c) applies to cell phones, and it is self-evident that a landline cannot receive a text message. 47 C.F.R. § 64.1200(e). But even if it didn't, there is no reason why a text message "call" should not alternatively be considered a "message" under that section. No reliance to external sources, 2023 FCC orders, other FCC rulemaking, or

divination is required. The statute marks its own boundary. Defendant's theory has no legs.

It is equally as clear that the provision sued under here, 47 C.F.R. § 64.1200(c)(2), applies to residential numbers, which include residential cell phones. Defendant's argument that a cell phone cannot be a "residential" telephone number, and therefore that no cellular telephone is entitled to the TCPA's Registry protections, rests on a statutory interpretation that is "a bit strained as an initial matter." *Riley v. California*, 573 U.S. 373, 397 (2014). Again, as with any question of statutory interpretation, the Court's inquiry "begins with the text." *Ross*, 578 U.S. at 638. That analysis shows that residential cell phones are plainly eligible for inclusion in the National Do Not Call Registry. As such, the Plaintiff need not, and does not, rely on the FCC's interpretation of an unambiguous statutory provision, nor is a stay warranted to see whether the Court should follow the FCC's interpretation of an unambiguous statute.

In enacting the Do Not Call provisions of the TCPA, the FCC chose to extend protection to "residential telephone subscribers." 47 C.F.R. § 64.1200(c)(2). Reading the term "residential" to exclude other services, such as cellular services, used for personal, household purposes, as Plaintiff has pled here, is inconsistent with multiple canons of construction. Without a controlling statutory definition, as here, the term "residential" takes on its "ordinary . . . common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). And, under the fixed-meaning canon, "[w]ords must be given the meaning they had when the text was adopted." Scalia & Garner 78.

With respect to the TCPA, there are potentially two relevant time frames to consider: 1934, when the Telecommunications Act of which the TCPA is a part was enacted, and 2003, when Congress passed the 2003 Act. Regardless of which the Court chooses, the meaning of the term "residential," as an adjective modifying "telephone subscribers," is the same. "Residential" means "used as a residence *or by residents*; adapted to (1936)/restricted to (2003) . . . residences;

of or connected with (1936)/relating to (2003) . . . residence or residences." *Compare* Webster's

New Collegiate Dictionary, Eleventh Ed. (2003) *with* Webster's Collegiate Dictionary (1936)

(emphasis added) (cleaned up). Especially in Webster's 2003 sense of "residential" meaning

"restricted to" residences, the term "residential" is contrasted with the adjective "nonresidential,"

which is "not used as" or "not restricted to" residences or by residents. Webster's New

Collegiate Dictionary, Eleventh Ed. (2003). In using "residential" language, the drafters realized

that, in the future, traditional residential forms of telecommunication like copper landlines may

come to be supplanted by other technologies, like VoIP and cellular technologies. In using the

term "residential," Congress and the FCC meant what they said. They meant to contrast

residential service *uses* from nonresidential *uses* and restrict DNC Registry protections to the

former, regardless of the type of technology that the consumer chooses, which can change. That

interpretation is consistent with the language of the Telecommunications Act, which applies to

all forms of communication, including to *technologies yet to be developed*. 47 U.S.C. § 153(53)

(defining a telecommunications service "regardless of the facilities used").

 Any other reading arbitrarily limits the scope of the term "residential" to read "copper

landline." No part of the statute contains a suggestion that the general term "residential" should

be given such a limited, narrow meaning. Instead, the statute suggests there is a distinction

between "residential" and "nonresidential," i.e. commercial, *uses* and *purposes*, regardless of the

*technologies* used. This reading is in lockstep with the Plaintiff's reading and the statutory text.

Importantly, in 2003 and continuing through present, the Code of Federal Regulations

specifically relating to "Telecommunications" defined a "residential subscriber" as a "subscriber

to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d). A

"business subscriber" was defined as a "subscriber to a telephone exchange service for

businesses." *See* 47 C.F.R. § 64.2305(b). Accordingly, "consumers" who subscribe to "telephone exchange services" are protected by the DNC Registry. "Businesses" who subscribe to "telephone exchange services" for businesses are not. And a "telephone exchange service" clearly implicates cell phones, in that cell phone service is provided, "through a system of switches, transmission equipment, or other facilities (or combination thereof) by which a subscriber can originate and terminate a telecommunications service." 47 C.F.R. § 64.2305(g)(1)(B). And a "telecommunications service" means "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available directly to the public, *regardless of the facilities used*." 47 U.S.C. § 153(53) (emphasis added). And "telecommunications" means "the transmission, between or among points specified by the user, of *information of the user's choosing*, without change in the form or content of the information as sent and received." 47 U.S.C. § 153(50) (emphasis added). That is to say, a "telephone exchange service" for "consumers" allows a subscriber to send and receive information "of the user's choosing," which, of relevance above, includes both calls and text messages, "regardless of the facilities used," such as a cell phone or landline.

As such, "according to the TCPA's plain language and dictionary definitions of 'residence' and 'subscriber,' 'a residential subscriber is one who maintains a phone for residential purposes…*i.e.*, for personal activities associated with his or her private, domestic life.'" *Lirones v. Leaf Home Water Sols., LLC*, No. 5:23-CV-02087, 2024 WL 4198134, at *6 (N.D. Ohio Sept. 16, 2024) (citing *Cacho v. McCarthy & Kelly LLP*, No. 23-CV-11157 (LJL), 739 F. Supp. 3d 195, 206 (S.D.N.Y. 2024)). In other words, the analysis turns on *how* the subscriber uses the line, not what *device or technology* they use it on. Indeed, as the Middle District of Pennsylvania held last year:

> The best reading of the word "residential" is not that it modifies the "telephone," but rather that "residential" and "telephone" both modify the "subscriber." So instead of describing a "subscriber" who owns a "residential telephone," Section 227(c)(1) describes a "telephone subscriber" who has subscribed for "residential," i.e., personal, purposes. "Residential" is therefore used in the broader sense of "relating to a resident" to distinguish such a subscriber from a business or commercial telephone subscriber, who cannot be added to the Do Not Call registry.

*Jackson v. Direct Bldg. Supplies LLC*, No. 4:23-CV-01569, 2024 WL 184449, at *5 (M.D. Pa. Jan. 17, 2024). For that matter, such a holding is entirely consistent with the statutory text contained at 47 C.F.R. § 64.1200(e) and the 2003 FCC TCPA Order.

Indeed, the TCPA itself distinguishes between "business subscriber" and "residential subscriber" in 47 U.S.C. § 227(a)(2)(A): "The term "established business relationship" … "shall include a relationship between a person or entity and a *business subscriber* subject to the same terms applicable under such section to a relationship between a person or entity and a *residential subscriber*." (emphasis added). This shows "Congress used the term 'residential' in the broader sense of 'relating to a resident' to distinguish such a subscriber from a business or commercial telephone subscriber." *Cacho*, 739 F. Supp. 3d at 206. This distinction "would make little sense if the term 'residential subscriber' referred to users with landlines physically located in their residences, rather than users who use their phones for residential purposes, because many individuals operate home-based businesses." *Id.* at 207.

As such, this Court need not even consider whether the FCC's interpretation that residential cell phones are eligible for registration on the National Do Not Call Registry has binding effect because the court can so hold so using the plain tools of statutory construction without regard to the FCC's interpretation. Indeed, the Fourth Circuit concluded the TCPA's language was clear and that numbers on the Do Not Call Registry, including cellular telephones, are "presumptively residential." *Krakauer*, 925 F.3d 657:

The statute marks its own boundary. Suit can only be brought by those who receive multiple violative calls. Calls are only violative if the phone number was on the Do-Not-Call registry. And a number can only be placed on such a registry if the number is a residential line. Whatever work we may be required to do for more broadly worded statutes, Congress did the work for us here.

This Court is bound to abide by the binding precedent on the issue set in *Krakauer*, which itself used independent statutory interpretation, just as the Ninth Circuit did in its majority opinion in *Chennette*. 50 F.4th at 1225 (holding similarly to *Krakauer*). Thus, regardless of whether the Supreme Court holds in *McKesson* the FCC's interpretation of the TCPA is legally binding or not, this Court's interpretation will be driven by traditional tools of statutory construction, which dictate the correct result, that residential cell phones can be registered on the DNC. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374, 14 (2024) ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction, not individual policy preferences.").

Nor are the Plaintiff's well-pled allegations as to the residential use of his number to be disregarded, either. Mr. McGonigle has pled straightforward facts that his telephone number is a residential line. Plaintiff uses, and at all times has used, the number at issue as his personal residential telephone number. *See* ECF No. 1 at ¶ 9. The Plaintiff also pled that he does not use, and has not used, the number for business or commercial purposes. *Id.* at ¶ 10. As a result, Plaintiff sufficiently alleges that his telephone is a residential telephone. And since the Court must view the complaint in the light most favorable to the plaintiff and accepting all well-pleaded facts as true at the pleadings stage, Defendant's contention that Plaintiff cannot bring suit under 47 U.S.C. § 227(c) because the alleged calls were made to some non-residential telephone fails as it is contradicted by the *express factual allegations* in Plaintiff's class action complaint. *See, e.g.*, *Koeller v. Seemplicity Sec. Inc.*, No. 4:24-CV-00528-SRC, 2024 WL 4751306, at *3 (E.D. Mo. Nov. 12, 2024) ("[plaintiff] alleges that he uses his cell phone for

'personal residential purposes…[this] allegation is a factual one and in no way conclusory").

Mr. McGonigle has pled more than enough to demonstrate that his number is residential. However, if this Court believes that more is required from Plaintiff, this Court can take judicial notice of Plaintiff's other pleadings where he pleads more information about his number:

- Mr. McGonigle does not have a landline telephone number in his home or any other telephone number.
- Mr. McGonigle uses his cellular phone number for personal use only as one would use a landline telephone number in a home.
- Mr. McGonigle uses his cellular phone number primarily to communicate with friends and family, and also to schedule personal appointments and for other household purposes.
- Mr. McGonigle personally pays for his cell phone plan; it is not reimbursed by a business.

*McGonigle v. Perpay, Inc.*, Civil Action No. 2:25-cv-00326-JMY, ECF No. 18, ¶18-21. If necessary, the Plaintiff should be permitted to amend his complaint to add these allegations.

C.    *The Do Not Call Registry does not require personal registration.*

Nor do the provisions of the TCPA require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that matter, such a holding would also run afoul of the 2003 TCPA Order, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." 2003 TCPA Order at 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy, as an initial matter. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Watson*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *9 (S.D.N.Y. Sept. 29, 2022) (holding that "whether each class member registered their number on the NDNCR is irrelevant."); *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023); *D.G. v. William W. Siegel & Assocs.,* 791 F. Supp. 2d 622, 625 (N.D. Ill. 2011) ("Plaintiff is the regular user and carrier of the phone, Plaintiff qualifies as a "called party" under the TCPA."); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014) ("Defendant seeks to arbitrarily limit standing to only the individual whose name appears on the bill. Notably, Defendant does not cite a single case to support this position. Further, this position has been rejected by other courts.").

*Rombough* was most notably rejected in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that

25

"borders on the frivolous." The *Callier* court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-
> populated: it is a list of phone numbers for individuals who have requested that
> telemarketers not contact them. While it is possible a third-party may have registered a
> plaintiff's phone number before a plaintiff acquired it, this is unlikely given how
> infrequently people change numbers. And it is particularly unlikely here given Plaintiff's
> well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). As a result, there is no requirement that an individual personally register

their number on the Do Not Call Registry and this Court need not even consider the issue when

determining whether to strike the class allegations at the pleadings stage.

D.      *The Plaintiff alleged "willful" violations.*

Of relevance here, the TCPA permits the Court to award up to treble damages "If the

court finds that the defendant willfully or knowingly violated the regulations prescribed under

this subsection." 47 U.S.C. § 227(c)(5). The Plaintiff has pled facts in his complaint that give rise

to the plausible inference that Defendant knew that it was sending the subject messages.

Accordingly, the Defendant's motion on this point must fail. In *Koeller*, 2024 WL 4751306, at

*4  (cleaned up), the Court explained, with respect to the same claims here:

> Under the plain text of section 227(c)(5), two types of violations may entitle a plaintiff to
> damages amounting to three times the set statutory damages: knowing violations and
> willful violations. . . . The Court therefore begins by considering the ordinary meaning of
> the adverbs "knowingly" and "willfully." . . . . "[K]nowingly" ordinarily means "[i]n a
> knowing manner" or "with knowledge," i.e., "intelligently, consciously, intentionally,
> etc." . . . . The proper interpretation of section 227(c)(5) therefore turns on how a
> defendant knowingly "initiated any telephone solicitation to:...[a] residential telephone
> subscriber who has registered his or her telephone number on the national do-not-call
> registry of persons who do not wish to receive telephone solicitations that is maintained
> by the Federal Government."
>
> When read into section 64.1200(c)(2), "knowingly" and "willfully" modify a transitive
> verb—"initiated." Ordinarily, a listener assumes that an adverb that modifies a transitive
> verb "tells the listener how the subject performed the entire action." *Flores-Figueroa v.*
> *United States*, 556 U.S. 646, 650 (2009). For example, "if a bank official says, 'Smith
> knowingly transferred the funds to his brother's account,' " listeners "would normally
> understand the bank official's statement as telling [them] that Smith knew the account

was his brother's." *Id.* That is because "once [knowingly] is understood to modify the object of [the] verb[ ], there is no reason to believe it does not extend to the phrase which limits that object." *Id.* at 657. . . . So too in the context of section 227(c)(5) and section 64.1200(c)(2). There, a listener would ordinarily understand, for example, that knowingly "initiated any telephone solicitation to:...[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry," 47 C.F.R. § 64.1200(c)(2), means that a person knew that he initiated a telephone solicitation and knew that he was calling a residential telephone subscriber who had registered his or her telephone number on the national do-not-call registry.

So it follows, as courts have held, that a plaintiff states a claim for trebled damages under the TCPA where the complaint alleges that a defendant consciously and deliberately delivered the texts at issue to a number on the Do Not Call Registry, even if the defendant did not intend to violate the TCPA. *See, e.g., Lemieux v. AT&T*, No. 10cv0982 JAH (WMc), 2011 WL 13356092, at *4 (S.D. Cal. May 13, 2011); *Davis v. Diversifield Consultants, Inc.*, 36 F. Supp. 3d 217, 226 (D. Mass. 2014) ("While neither the TCPA nor FCC regulations provide a definition for willful and knowing, most courts have interpreted the willful or knowing standard to require only that a party's actions were intentional, not that it was aware that it was violating the statute.").

E.      *The Class ought not to be struck and no stay or limitation is warranted.*

Rule 12(f) provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on its own or on motion made by a party before responding to the pleading, such as the Complaint, as here. FED. R. CIV. P. 12(f), (f)(2). The standard adopted in these cases is akin to that under Rule 12(b)(6), permitting striking class allegations only in cases where "*the pleading* makes clear that the purported class cannot be certified and *no amount of discovery* would change that determination." *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991) (emphasis added). Notably, the Fourth Circuit has stated that such "motions are to be granted infrequently." *Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 246 (4th Cir. 2007).

Defendant finally claims that the class claims ought to be struck because the classwide issues cannot be determined on common proof. Not so. On this point, the case of *Payne v. Sieva Networks, Inc.*, is distinguishable. In that case, the Court there, unlike here, held that the plaintiff failed to make the required showing as to predominance when the evidence adduced by the defendant there revealed that the calls were placed to "target[] trucking businesses," and therefore were not sent to residential numbers. 347 F.R.D. 224, 227 (N.D. Cal. 2024). In arriving at its decision in *Payne*, the court pointed to the fact that the defendant obtained the numbers it called from lists of numbers "registered with the USDOT, which is some indication of a non-residential use." *Id.* at 228. That is not a problem here, as the calls were placed for fitness memberships, a residential purpose. Furthermore, the court acknowledged that in other circumstances certification of TCPA classes is *appropriate*, like when the communications are directed towards consumers, as here, and where expert testimony and databases could be used to determine whether numbers were residential. *Id.* at 227; *Lyman v. QuinStreet, Inc.*, No. 23-CV-05056-PCP, 2024 WL 3406992, at *3 (N.D. Cal. July 12, 2024).

 Nor is the out-of-circuit *Chenette* standard appropriate here; *Krakauer* controls in this circuit on the appropriateness of class certification, even in light of the residential and consent issues outlined here and counsels why the issues here are susceptible to common, classwide proofs and thus are easily capable of classwide resolution on their face, as courts routinely do in an "administratively feasible" manner. *Krakauer*, 925 F.3d at 656. As the district court below observed in *Krakauer*, cell phones on the Do Not Call Registry are "presumptively residential," *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 397 (M.D.N.C. 2015), and whether numbers are residential, how many times each number was called, and by whom, can all be ascertained from a company's own databases, as well as commercial databases, in discovery. *Mantha v.*

28

*QuoteWizard.com, LLC*, 347 F.R.D. 376, 388 (D. Mass. 2024). As another Court observed:

> [That] twisted logic would mean that TCPA class actions can never be brought. Had Congress wanted to preclude aggregation of individual TCPA claims, it could have so provided in the TCPA itself or in [the Class Action Fairness Act]. Nor does it appear difficult to determine how many telemarketing calls were placed to class members, assuming Direct Building Services keeps records of its business calls; this fact can easily be ascertained through a company database.

*Jackson*, 2024 WL 184449, at \*10. That logic applies with equal force here.  Assuming that

AmFam keeps records of its business texts, as opposed to texts to residential subscribers,

ascertaining whether the texts were directed to business or residential subscribers would be

ascertainable through the Defendant's own records, and not any external database.

And in *Mattson v. Rocket Mortgage*, on a full evidentiary record and after discovery, the

Court denied class certification when it was revealed that the plaintiff and class representative

was atypical of other class members because there was an *individualized* factual dispute as to

whether *the named class representative* used his number for business purposes. No. 3:18-CV-

00989-YY, 2024 WL 4794710, at \*2–\*3 (D. Or. Sept. 16, 2024). Likewise in the other cases

involving that same plaintiff. That is plainly not the case here, and certainly not a decision the

Court can make on a limited evidentiary or expert record and without the benefit of discovery.

Moreover, this Court should not strike the class based upon this Court's decision in

*Davis*. There, the Plaintiff's expert's testimony as to how she was able to use information from

the Reassigned Number Database was unreliable, not because the database does not have the

date of reassignment, as the Defendant claims (it in fact does), or that other official databases

besides the Reassigned Number Database that provide the date of assignment *also* exist (they do,

including the LERG), but because the expert did not "actually test[] whether her proposed

methodology reliably identifies class members." *Davis v. Cap. One, N.A.*, No. 1:22-CV-00903

(AJT/IDD), 2023 WL 6964051, at \*8 (E.D. Va. Oct. 20, 2023). Of course, striking the Plaintiff's

class definition at the pleadings stage would be particularly inappropriate here, as the Plaintiff has not yet secured an expert, nor any report made by which to challenge the reliability of the expert's practices and methods, nor shown why his expert's methods are more reliable. For that matter, the class is also not impermissibly failsafe, because it is ascertainable through objective criteria, and not the legal elements of the claim. It is a simple matter for the Plaintiff to determine what date a number was assigned to a subscriber and compare that date to the date Defendant obtained such a number. If a number was assigned *after* a number was obtained by Defendant, it follows that the new subscriber could not have provided its number to Defendant.

Nor should this Court limit the scope of the class claims to March of 2024 or otherwise stay the proceedings. As explained above, the explicit text of the 2023 TCPA Order made clear that it was not creating new law, as other Courts have agreed. The statute on which Plaintiff sues was promulgated in 2003, well before the text messages at issue were sent. Contrary to the Defendant's assertion, the FCC did not conflate matters or produce anomalous results, nor did it seek to rectify them in 2023. The law has been quite clear on the subject, by its plain statutory text, since 2003. As such, there is no issue of retroactive application for this Court to rectify. As one Court put it, addressing a similar motion: "even if the FCC's ruling is not entitled to deference, an independent analysis reveals that the agency got it right." *Abboud v. Lotta Dough, LLC*, No. 1:24-CV-00482-JRN, 2025 U.S. Dist. LEXIS 35547, *3 (W.D. Tex. Feb. 27, 2025).

## IV.   CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, it should permit the Plaintiff to amend to correct any deficiencies.

Dated: April 28, 2025                    PLAINTIFF,
                                         By his attorney

                                         */s/ William Robinson*
                                         William Robinson
                                         VSB:76098
                                         319 N. Piedmont St., #1
                                         Arlington VA. 22203
                                         ph. 703-789-4800
                                         wprlegal@gmail.com

                                         /s/ Anthony I. Paronich
                                         Anthony I. Paronich
                                         Paronich Law, P.C.
                                         350 Lincoln Street, Suite 2400
                                         Hingham, MA 02043
                                         (508) 221-1510
                                         anthony@paronichlaw.com
                                         **Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

On April 28, 2025, I electronically served the foregoing document on counsel of record

for the Defendant.

                                         */s/ William Robinson*
                                         William Robinson